IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-381** |
| **TREVA HARRIS** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Treva Harris was a successful local entrepreneur who exploited the pandemic relief loan program by securing a $535,000 loan for a childcare business that she falsely claimed had 27 employees and $2,568,000 in annual payroll expenses, when in reality her business had approximately 3 employees and $165,000 in annual payroll expenses. She not only made these materially false representations in her loan application, but she also supported them with a fabricated IRS form that purported to corroborate her inflated payroll numbers. Harris then misspent the proceeds of her fraudulent loan on shopping from luxury retailors and through large cash withdrawals, as well as three checks totaling $75,000 that she wrote to an auto-repair business[1] owned by her boyfriend, Saleem Lucas, a convicted drug trafficker who is currently serving an 87-month sentence in federal prison. As set forth in greater detail below, nothing short of a guidelines sentence of imprisonment of 15 to 21 months is an appropriate punishment for the defendant, after factoring in any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. §

---

[1] This auto-repair business also received a $91,600 pandemic relief loan.

3553(a) factors in determining the appropriate sentence. See USSG § 1B1.1 (Nov. 1, 2025).[2] At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I. <u>BACKGROUND</u>

On September 4, 2025, defendant Treva Harris was charged by information with bank fraud, in violation of 18 U.S.C. § 1344 (Count One). The charge arises from the defendant's participation in a scheme to file a fraudulent Paycheck Protection Plan loan application, which resulted in a fraudulently obtained loan award of approximately $535,000, which Harris misspent. The government and the defendant executed a guilty plea agreement, through which

[2] Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

the defendant agreed to plead guilty to Count One of the information. The Court accepted the defendant's guilty plea on October 2, 2025. The sentencing hearing is currently scheduled for June 23, 2026.

## II. <u>OFFENSE CONDUCT</u>

Defendant Harris' offense conduct is accurately reflected in the pre-sentence report ("PSR"). In 2020, the defendant was a successful local entrepreneur who applied for and received multiple pandemic relief loans backed by the United States Small Business Administration ("SBA"), including two loans for a modest childcare business named Child Prodigy Education Center ("CPEC") that was located in Philadelphia, Pennsylvania. CPEC was housed in one unit of a converted residential row home, pictured below.



The first of the two CPEC loans was an Economic Injury Disaster Loan ("EIDL") that resulted in approximately $514,900 in disbursements to Harris; the second was the $535,000 fraudulent Paycheck Protection Program ("PPP") loan that forms the basis of her conviction.

PSR ¶¶ 1-15. Neither loan was ever repaid.

Defendant Harris' EIDL loan application for CPEC was originally submitted in April 2020, and it accurately represented that her childcare business had only three employees, gross income of $165,907 for the past 12 months, and $113,420 in "cost of goods sold" (i.e. payroll). However, two months later (in June 2020) Harris submitted a separate PPP loan application for CPEC in which she falsely claimed that CPEC actually had 27 employees and a monthly payroll of $214,000, which annualized to $2,568,000. In support of these misrepresentations Harris conjured up and submitted a fabricated IRS Form 940 that falsely supported her wildly inflated alleged payroll expenses. PSR ¶ 15.

As noted, Harris received over a half-million dollars—$535,000, to be exact—from her fraudulent PPP loan in June 2020, much of which she promptly misspent on personal luxury retail purchases, large cash withdrawals, and checks written to the business of her boyfriend, Saleem Lucas.[3] Within weeks, Harris had spent thousands of dollars at retail outlets including Target and Walmart, thousands of dollars of purchases from Amazon, and thousands of dollars of purchases from luxury retailers such as Gucci, Burberry, Dolce & Gabbana, and Nordstrom.

Harris also made numerous large cash withdrawals. On June 9, 2020, Harris withdrew $9,700 in cash. On three consecutive days from June 9, 2020, to June 11, 2020, Harris wrote three separate $25,000 checks (totaling $75,000) to Back 2 New 2, an auto-repair business owned by her drug-trafficking boyfriend, Lucas.[4] On June 11, 2020, Harris wrote an $8,700

[3] Lucas and Harris began dating in 2016, after meeting at Lucas' auto shop, Back 2 New 2. PSR ¶ 48. They purchased a spacious, $732,500 New Jersey home together in March 2021. In 2025, Harris pled guilty to conspiring to distribute cocaine from February 2023 to September 2023. 25-cr-89. He was sentenced to 87 months' imprisonment.

[4] As noted, Back 2 New 2 also received a $91,600 pandemic relief loan, which was never repaid.

check to herself. On June 24, 2020, Harris wrote a $25,000 check and then another $30,000 check to herself. She also appears to have made numerous CashApp transfers to Lucas totaling thousands of dollars. And she also took a vacation to southern California including San Diego and La Jolla from June 15 - 22, 2020, which was funded in large part by the proceeds of the PPP loan.[5]

Harris' application for CPEC's separate EIDL loan accurately represented the business' number of employees and payroll expenses, as noted above. Accordingly, the government is not asking the Court to include the $514,900 that CPEC received from this loan when calculating the total fraud loss caused by Harris. Nevertheless, Harris' spending of the $514,900 EIDL loan proceeds was similar to her spending of the fraudulent PPP proceeds, in that she wrote tens of thousands of dollars of checks to herself and Lucas. PSR ¶ 15, n.1.

## III. STATUTORY MAXIMUM SENTENCES

### A. Statutory Maximum Sentence

The total statutory maximum sentence for the defendant's bank fraud conviction on is 30 years' imprisonment, a 3-year period of supervised release, a $1,000,000 fine, and a $100 special assessment.

### B. Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range, as follows. The base offense level is 7, to which 12 levels are added due to the actual fraud loss being between $250,000 and $550,000, for adjusted offense level of 19. The defendant next receives a total reduction of 3 levels for acceptance of responsibility and her timely plea, and

[5] The government acknowledges that some portion of the fraudulent PPP loan may have been spent on business expenses, including two $6,243 checks for lease payments and a $53,550 check for payroll services.

another 2-level reduction for being a zero-point offender. PSR ¶¶ 24-33. Her final offense level is 14, which at criminal history category I equates to 15 to 21 months' imprisonment. PSR ¶ 84.

## IV. ANALYSIS OF THE SENTENCING FACTORS

### A. Legal Framework for Sentencing Analysis

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the

offense. 18 U.S.C. § 3553(a). A consideration of these factors follows below.

**1. Nature and Circumstances of the Offense**

Harris stole more than a half-million dollars of taxpayer money that was earmarked for small businesses which were struggling to make ends meet during the pandemic. She did this by submitting materially false payroll and employee information and by submitting a bogus IRS form that purported to corroborate her false claims. She then frivolously spent a large portion of the money on herself and her boyfriend, including on luxury retail purchases, a California vacation, and large cash withdrawals. She did all this while simultaneously applying for and receiving another pandemic relief loan for the same business, which also resulted in a half-million-dollar payout. This was a serious crime motivated by greed, not necessity, which weighs heavily in favor of a guideline sentence of imprisonment.

**2. History and Characteristics of the Defendant**

Harris has lived an otherwise law-abiding life and therefore qualifies for the 2-level reduction for being a zero-point offender. Having received this reduction, the fact that Harris has no criminal history does not entitle her to an additional downward variance.

There is no question, based on the many character letters submitted on Harris' behalf, that she is valued in her community and that she has made positive contributions to those around her. Although this community support is a factor that mitigates in Harris' favor, it must be balanced against the fact that she stole more than a half-million dollars in taxpayer money and spent much of it selfishly on herself and her boyfriend. On this record, no amount of community support should totally excuse the defendant from serving a meaningful term of incarceration.

The defendant's financial disclosures reveal that she owns multiple properties, some of which she owns through one of her businesses. Along with Lucas she owns an upscale Medford,

New Jersey home worth more than a million dollars, in which she has approximately half a million dollars of equity. At least one of her businesses, Millionaire Minds, has significant monthly net cash flow ($31,000).[6] She has significant cash on hand in multiple bank accounts. In sum, she appears to be a financially savvy businesswoman with the means to support her family and her comfortable lifestyle. Her assertion that keeping her out of prison will more easily allow her to repay the government is belied by the fact that, to date, she has made no meaningful effort to do so (Harris' apparent attempts to obtain hardship exemptions from the SBA hardly count as serious attempts to repay the government). In fact, she has not even made a token restitution payment in advance of sentencing, let alone a meaningful payment. The Court should give little if any mitigative weight to Harris' alleged financial struggles; in fact, the fact that Harris has not made any significant repayments to date should weigh in favor of a guidelines sentence of imprisonment.

**3. Seriousness of the Crime and Respect for the Law**

The defendant's crime, as noted, was serious and only a guideline sentence of imprisonment will adequately promote respect for the law and provide just punishment for the offense.

**4. Deterrence**

General deterrence is a factor that weighs heavily in favor of a guidelines term of imprisonment. When individuals like Harris defraud a federal relief program like the PPP program, the public must know that they will be held accountable and punished significantly. If the message of general deterrence is not sent to public, there is nothing to deter tomorrow's

[6] Harris also applied for and received a $93,800 EIDL loan for Millionaire Minds, which has not repaid.

would-be fraudsters from pilfering the next relief program during future public health crises.

Specific deterrence is also important here to make sure Harris does not re-offend. Although she has lived a law-abiding life for many years, her ongoing romantic relationship with Lucas, a narcotics trafficker, raises some concerns about her judgment and ability to separate herself from negative influence. In fact, Harris' mitigation report suggests Lucas is partially to blame for Harris' loan fraud. *See* Ex. A at 2-4. Notwithstanding the allegedly malign influence of Lucas, Harris reported to Probation that she remains in a romantic relationship with him. PSR ¶ 48. So long as Lucas remains in the picture, Harris' risk of re-offending is substantially higher than her pre-Lucas record would otherwise suggest.

**5. Consistency in Sentencing**

A guidelines sentence of imprisonment for Harris will ensure consistency in sentencing with similarly situated defendants nationwide.

**6. Educational or Vocational Needs**

There is no need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." § 3553(a)(2)(D).

## V. SUPERVISED RELEASE

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of

supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of at least one year is warranted. As explained above, Harris committed a serious, premeditated crime notwithstanding her otherwise positive role in her community. A term of supervised release in this case advances the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), protect the public, § 3553(a)(2)(C), assure that the defendant continues to pursue education and vocational efforts that promote rehabilitation, § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

## VI. CONCLUSION

For these reasons and subject to any that may be presented at the defendant's sentencing hearing and in the Sealed Supplement, the government believes that a guideline sentence of imprisonment is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s Matthew T. Newcomer*
S. CHANDLER HARRIS
MATTHEW T. NEWCOMER
Assistant United States Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Sentencing Memorandum has been served via email upon:

Troy A Archie, Esq.
Counsel for the Defendant

/s/ *Chandler Harris*
S. CHANDLER HARRIS
Assistant United States Attorney

Date: June 17, 2026